JAMES G. WHITAKER AND PEARL WHITAKER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73848. Filed April 29, 1960.

*John A. Bostwick, Jr., Esq.,* for the petitioners.
*Wallace M. Wright, Esq.,* for the respondent.

#### OPINION.

PIERCE, *Judge:* Respondent determined the following deficiencies in the petitioners' income tax:

| Year ending Dec. 31 | Deficiency |
| --- | --- |
| 1954 | $2,475.53 |
| 1955 | 1,035.81 |
| 1956 | 1,078.81 |

The sole issue for decision is: Where the principal petitioner purchased a going business under a conditional sales contract, and pursuant to such contract took out for his own benefit a life insurance policy on the life of the vendor of such business, are the premiums paid by petitioner on said policy deductible by him? All other issues raised by the pleadings were conceded by the petitioners.

All the facts have been stipulated, and are so found. Said facts may be summarized as follows.

The petitioners, James G. and Pearl Whitaker, are husband and wife residing in Guntersville, Alabama. They filed a joint income tax return for each of the years involved, with the district director of internal revenue at Birmingham, Alabama. The wife is a party herein solely by reason of her having joined with her husband in filing said joint returns.

The husband, James G. Whitaker (hereinafter called the petitioner), was employed prior to August 1, 1953, as manager of Guntersville Concrete Products Company (hereinafter referred to as the Company), which was a sole proprietorship of an individual named A. G. Finlay.

Early in the year 1953, the petitioner and Finlay began negotiations for the petitioner's purchase of the business; and on August 1, 1953, a conditional sales contract for purchase of the business was executed. This contract, so far as here material, provided as follows:

STATE OF ALABAMA }
MARSHALL COUNTY } CONDITIONAL SALES CONTRACT

KNOW ALL MEN BY THESE PRESENTS:

That A. G. Finlay, his heirs, assigns and representatives, of the City of Guntersville, Alabama, party of the first part, owner and now conducting business under the name and style of The Guntersville Concrete Products Company * * * has agreed to sell said business so conducted by him, including the good will, stock and trade, trucks, equipment, machinery, tools and fixtures necessary in and about the operation of The Guntersville Concrete Products Company as a functioning unit; * * *

That J. G. Whitaker, his heirs and representatives, also of the City of Guntersville, Alabama, party of the second part, does hereby agree to purchase the above described property upon the following terms and conditions, to-wit:

1. The party of the second part agrees to pay the sum of $4,000.00 upon the signing of this contract, the receipt whereof is hereby acknowledged, and the remaining sum of $52,000.00 in monthly installments [of from $150 to $500 as specified, together with interest on the unpaid balance] * * *

2. The party of the second part shall have the immediate and continuous possession of the said business and right to operate the same so long as he shall not be in default of any of the terms or provisions by him to be carried out or to be performed as herein set forth; however, the title to the business and all chattels and all the property hereby sold shall be and remain in the first party until such time as second party shall have paid the full sum of $52,000.00 with interest thereon and carried out all of the other provisions and conditions of this contract by him to be performed.

\*        \*        \*        \*        \*        \*        \*

4. In order to further protect the interest of the party of the first part hereunder, and to indemnify him from loss due to depreciation, reduction of stock, and destruction or loss of equipment, etc., the party of the second part does hereby agree to deposit in The First National Bank of Guntersville in a separate and special account for the purposes herein, the sum of $3,000.00 on or before 18 months from the date of this contract; this said sum shall be used to pay the last maturing installments of this contract, or upon completion of

all terms and provisions of said contract said sum shall become the sole property of the party of the second part. * * *

5. * * * [T]he net proceeds from all sales shall be used to retire this said indebtedness or to purchase new equipment * * *

6. The party of the second part does further agree * * * to submit to the party of the first part a financial report prepared by a reputable certified public accountant twice yearly—during the months of June and December; and that in said report such accountant will state whether in his opinion said business is financially sound or unsound.

7. The party of the second part does further agree to draw no funds from the said business in excess of $75.00 per week for his personal living expenses while this contract is in force and effect except with the written consent of the party of the first part.

8. The parties hereto have this date entered into a lease with option to purchase agreement whereby the party of the first part has leased unto the party of the second part the property upon which The Guntersville Concrete Products Company is located and the railroad spur and buildings situated thereon for a period of this contract and under same terms and conditions as herein contained [providing for a specified monthly rental and a specified option] * * *. That failure to pay any one or more monthly rental payments shall be considered a default under the terms of this contract.

9. The party of the second part does further agree that the party of the first part will be allowed wholesale cost for the purchasing of any item or items of or through said business for the duration of this said contract, * * * provided, however, that such amount purchased * * * shall not exceed $1,000.00 in any one year without the written consent of the party of the second part.

 *  *  *  *  *  *  *

11. The party of the second part does further agree to effect no sale or trade or transfer of any machinery, tools and equipment without the written consent of the party of the first part; provided, however, if a trade or sale of such is agreed upon the proceeds therefrom shall be applied to increase the value of the Company or be applied on the remaining indebtedness hereon.

 *  *  *  *  *  *  *

14. The party of the second part does further agree to immediately insure all of the stock, merchandise, fixtures, equipment and machinery, and other property hereby conveyed, in favor of the first party as his interest may appear, * * *

15. In order to effectuate the completion of this contract should either party depart this life before the same is so completed and in order to alleviate undue hardships upon the estate of party of the second part, the said party of the second part has caused certain policies of life insurance in which he is the named beneficiary to be issued—one on the life of the party of the first part for $25,000.00 and one on the life of the party of the second part for $30,000.00 [1]; and the said party of the second part does hereby agree to keep the premiums paid and such policies in full force and effect unless written permission from party of the first part is obtained to do otherwise.

16. If the party of the second part shall fail or neglect to make any of the payments specified or fail or neglect to perform any one or more of the provisions and conditions herein contained or if the certified public accountant referred to in paragraph 6 reports that said business is financially unsound and

---

[1] No error was assigned herein with respect to respondent's disallowance of deductions for the premiums on the $30,000 policy covering petitioner's own life.

the party of the first part deems himself insecure, then the party of the first part may, at his option, declare the entire sum then remaining unpaid to be due and payable, and he may, at his option, re-enter the said premises and repossess himself of all the property covered herein, retaining all sums theretofore paid by the party of the second part; and the said party of the second part in the event of default in payment or default in performing one or more provisions and conditions herein contained forfeits all rights arising hereunder [with certain exceptions not here material] * * *

   *      *      *      *      *      *      *

IN WITNESS WHEREOF, we have hereunto placed our hands and seals on this the 1st day of August, 1953.

/s/ Andrew G. Finlay
*Party of the first part*
/s/ J. G. Whitaker
*Party of the second part*

ATTEST:

* * *

Petitioner, acting pursuant to paragraph 15 of the above contract, obtained from the Equitable Life Assurance Society of the United States, a $25,000 10-year term policy of insurance on the life of Finlay. In this policy, petitioner was designated the sole beneficiary; and the policy contained the following statement: "The owner of this policy is James Grady Whitaker, his executors or administrators." No change of beneficiary and no assignment of the policy was at any time made. Neither the policy, nor the conditional sales contract, nor any other evidence of record, discloses any restriction as to the manner in which petitioner could disburse or apply any proceeds from the policy.

During each of the taxable years, petitioner paid premiums of $726 on the above-mentioned policy; and on his income tax returns for the taxable years involved, he claimed deductions for the same as operating expenses of the business which he was purchasing under the conditional sales contract. The respondent, in his notice of deficiency, disallowed such deductions. As hereinbefore stated, the correctness of such action of the respondent is the sole issue here presented for decision.

We think that the respondent's action in denying the deductions was proper. Deductions are allowable only where clearly provided under the statute, *New Colonial Co.* v. *Helvering*, 292 U.S. 435, 440. A taxpayer has the burden of justifying the allowance of any deduction. *White* v. *United States*, 305 U.S. 281.

It is to be observed that the policy of insurance here involved was not taken out by Finlay, who was the vendor of the business, nor was it taken out in favor of him; to the contrary, it was taken out by the debtor-vendee for his own benefit. The policy specifically designated the petitioner to be the "owner" and the sole "bene-

ficiary" thereof. No change of beneficiary and no assignment of the benefits of the policy was at any time made. Although the policy was to mature on the death of Finlay, its proceeds were to go to petitioner; and no legal restriction upon his application or use of such proceeds is disclosed, either in the policy, in the conditional sales contract, or in any other evidence of record. Thus, the policy represented a personal speculative investment by petitioner; and the premiums which petitioner paid thereon represented personal expenditures by him, which are not deductible for income tax purposes. See section 262 of the Internal Revenue Code of 1954.

The fact that the conditional sales contract provided that petitioner should maintain such a policy is not sufficient to qualify the premiums for income tax deduction. The contract required also that petitioner make monthly installment payments of principal and interest on the purchase price. But such contractual requirements regarding both insurance premiums and monthly installments, do not cause the same to be deductible, either under section 162 (trade or business expenses) or under section 212 (expenses for production of income). Even if it be assumed that petitioner intended to use the proceeds of the policy to accelerate payment of the purchase price of the business in the event of Finlay's death, the premiums could be regarded only as a means for providing petitioner with funds to complete his capital investment; and they would not qualify for deduction by him.

Section 264 of the 1954 Code contains an additional restriction on the deductibility of premiums paid on a life insurance policy of which the taxpayer is a beneficiary. The applicable income tax regulation under this section provides as follows:

SEC. 1.264–1. PREMIUMS ON LIFE INSURANCE TAKEN OUT IN A TRADE OR BUSINESS—(a) *When premiums are not deductible.*—Premiums paid by a taxpayer on a life insurance policy are not deductible from the taxpayer's gross income, *even though they would otherwise be deductible as trade or business expenses,* if they are paid on a life insurance policy covering the life of any officer or employee of the taxpayer, or any person (including the taxpayer) who is financially interested in any trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary of the policy. * * * [Emphasis supplied.]

In the instant case, it is not necessary to apply this section; for here the premiums are not "otherwise * * * deductible as trade or business expenses."

We decide the issue in favor of the respondent.

Reviewed by the Court.

*Decision will be entered for the respondent.*