Chism Ice Cream Company v. Commissioner. Estate of E. W. Chism, Deceased, Clara Chism, Executrix, and Clara Chism v. Commissioner.
Chism Ice Cream Co. v. Commissioner
Docket Nos. 80199, 80200.
United States Tax Court
T.C. Memo 1962-6; 1962 Tax Ct. Memo LEXIS 302; 21 T.C.M. (CCH) 25; T.C.M. (RIA) 62006; January 15, 1962
*302 1. Held, that part of the "salary" which the petitioner corporation paid to its president during each of the years 1953 through 1956, after he had become physically incapacitated and was confined to his home, represents excessive compensation which is not deductible by the corporation either as "salary" or as "health insurance payments." Amounts of reasonable salary to said officer for said years, which are deductible by the corporation, determined. 2. Held, that premiums paid by the petitioner corporation on a retirement income policy covering the life of its general manager, as to which the corporation was at all times the "direct beneficiary," are not deductible by the corporation in any year. 3. Held, that substantial withdrawals and advances from the petitioner corporation, which the corporation's president and his wife received during each of the years 1952 through 1956, constituted "informal dividends" to said individuals as stockholders of the corporation, which are includible in their gross incomes for the respective years in which the withdrawals were received; and that the same are not excludible from such gross incomes, either as "loans" or as "health *303 insurance plan payments." 4. Held, that assessment of a deficiency against the individual petitioners for the year 1952 is not barred by the statute of limitations, since more than 25 percent of the gross income includible in the return for said year was omitted from the return; and since the notice of deficiency herein was issued prior to the expiration of the period for assessment which was specified in a written agreement (Form 872) that was executed within 5 years from the filing of the return for said year. Paul E. Anderson, Esq. Mills Tower, San Francisco, Calif., for the petitioners. John O. Hargrove, Esq., and Aaron S. Resnik, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge. The respondent determined deficiencies in income tax, and the petitioners claim overpayments of such tax, as follows: Chism Ice Cream Company
Docket
Deficiency
Overpayment
No.
Year
determined
claimed
80199
1953
$10,204.30
$ 603.99
1954
9,984.00
915.41
1955
5,304.57
387.14
1956
7,013.03
915.41
Estate of E. W. Chism, Deceased,
Clara Chism, Executrix, and
Clara Chism
80200
1952
$ 4,557.10
$5,588.36
1953
3,388.92
5,436.08
1954
3,000.50
2,789.52
1955
3,233.48
2,427.56
1956
1,503.00
2,379.71 The cases were *304 consolidated for trial. The issues for decision, as raised by the pleadings, are: 1. Whether part of the "salary" which the petitioner corporation paid to its president E. W. Chism during each of the years 1953 through 1956 after he had become physically incapacitated and was confined to his home, represents excessive compensation for services rendered, which is not deductible by the corporation. In the alternative, if portions of said "salary" payments are not deductible by the corporation as salary, whether the same are deductible by it as "health insurance payments" made pursuant to a "self administered accident and illness insurance plan." 2. Whether the petitioner corporation is entitled to deduct for each of the years 1953 through 1956, as "additional compensation" to its general manager John T. Walther, the premium which it paid in each of said years on a retirement income policy on the life of Walther. 3. Whether the amounts of certain withdrawals and advances which E. W. Chism and his wife received from the petitioner corporation during the years 1952 through 1956 are includible in the gross incomes of said individuals for said years, as "informal dividends"; or whether said *305 amounts should be excluded from the gross incomes of these individuals, either as "loans," or as "health insurance plan payments." 4. Whether assessment of any deficiency against the individual petitioners for the year 1952 is barred by the statute of limitations. Findings of Fact Some of the facts have been stipulated. The stipulation of facts, including the exhibits thereto attached, is incorporated herein by reference. The petitioner, in Docket No. 80199, Chism Ice Cream Company, is a Nevada corporation which has its principal place of business in Reno, Nevada. Its income tax return for each of the calendar years 1953 through 1956, was filed with the district director of internal revenue at Reno. The two petitioners in Docket No. 80200 are: (a) The estate of E. W. Chism, deceased, acting as personal representative of the decedent with respect to his tax liabilities for years preceding his death on December 27, 1956; and (b) Clara Chism who is the widow of said decedent. A joint income tax return for the decedent and Clara was filed for each of the taxable years here involved, with the district director of internal revenue at Reno. Petitioner Chism Ice Cream Company (hereinafter *306 some times called the "Company") was incorporated in 1933, as successor to a sole proprietorship of the same name, which had been founded in 1905 by E. W. Chism (hereinafter sometimes called "Chism"). The business originally was that of manufacturing and selling ice cream, and also selling supplies and equipment incident to such business; but following the incorporation of the business and in all taxable years here involved, the Company engaged also in a separate business on the same premises, of bottling, selling, and distributing carbonated beverages. The Company had issued and outstanding, 190,000 shares of common stock of the par value of $1 per share. These shares were held during the periods hereinafter indicated, by the following named shareholders in the following amounts: Shareholders
Robert M.
Alice Jane
Clara Chism
Price
Frazer
(wife of
(not iden-
(daughter of
Period
E. W. Chism
Chism)
tified)
Chism)
1933 through 6/23/40
100,000
89,900
100
6/24/40 through 12/22/47
87,500
77,500
25,000
12/23/47 through 12/30/48
77,500
67,500
45,000
12/31/48 through 12/29/49
74,500
67,500
48,000
12/29/49 through 12/26/56
71,500
67,500
51,000 Chism was the president of the Company continuously from the time of its incorporation *307 until his death. And, during the years 1952 through 1956, his daughter Alice Jane Frazer was the vice president; and his wife Clara was the secretary. The board of directors, during said years 1952 through 1956, consisted of Chism, his wife, and his daughter. Beginning in 1953 and continuing through 1956, John T. Walther who was a long-time employee of the Company, was the general manager. The following statement shows, for the years 1948 through 1956: The amounts of the Company's sales, net income, and earned surplus; the amounts of all formal dividends declared and paid; and also the amounts of the salaries paid to E. W. Chism, Alice Jane Frazer, Clara Chism, and John T. Walther - all as recorded on the Company's books: Net Income
Before
After
Earned
Divi-
Federal
Federal
surplus
dends
income
income
at end
declared
Year
Sales
tax
tax
of year
and paid
1943
$ 566,833
$54,495
$25,573
$118,312
None [2]
1944
700,133
66,862
23,716
145,622
None
1945
698,105
23,687
17,318
160,965
None
1946
853,481
6,565
5,155
165,630
$587
1947
1,057,894
12,556
9,768
173,168
None
1948
944,969
13,309
10,348
181,756
None
1949
971,156
40,558
26,943
214,773
None
1950
1,003,876
27,248
20,791
233,804
None
1951
$1,079,948
[8,606)
None
$224,261
None
1952
1,135,007
8,159
$ 5,757
227,651
None
1953
1,219,207
72,316
40,691
266,582
None
1954
1,115,786
34,734
22,449
287,271
None
1955
1,101,742
1,290
903
285,486
None
1956
1,148,983
14,374
10,146
293,554
None
1957
1,238,917
25,086
17,654
309,483
None
1958
1,284,339
33,783
[1]
313,557
None
1959
1,265,838
(6,417)
[1]
305,171
None
*308 Salaries Paid
Alice
E. W.
Jane
Clara
John T.
Chism
Frazer
Chism
Walther
Year
(Pres.)
(V.P.)
(Sec.)
(Gen. Mgr.)
1943
$ 9,380
$ 720
None
Not shown
1944
9,380
720
None
Not shown
1945
15,000
2,042
None
Not shown
1946
18,000
2,532
None
Not shown
1947
18,000
2,484
None
$ 8,409 [4]
1948
18,000
2,830
None
8,281
1949
20,000
4,105
None
8,439
1950
24,000
4,968
None
14,097
1951
$24,000
$4,884
None
$ 9,462
1952
24,000
4,884
None
7,326
1953
24,000
5,000
None
9,800
1954
24,400
5,000
None
18,296
1955
24,210
4,820
None
13,798
1956
24,210
4,900
None
11,500
1957
[3]
4,900
$24,210
Not shown
1958
[3]
4,900
24,210
Not shown
1959
[3]
7,000
24,210
Not shown
Up until 1952, the progress and success of the Company was attributable principally to the personal efforts of Chism. The business grew from a one-man operation at the time of its founding in 1905 to a modern, mechanized ice cream and carbonated beverage enterprise, having between 50 and 75 employees. Through 1951, Chism personally handled at the plant, most of *309 the problems facing the Company, including those which pertained to production, credit and collections, and labor; and he also acted during that time, not only as the Company's president but also as its general manager. In addition, he was very active in community affairs, and also in trade organizations pertaining to the manufacture of ice cream and the distribution of carbonated beverages. After the beginning of 1952, Chism was physically incapacitated and was confined almost entirely to his home, as the result of a heart ailment which began in about 1948 and which recurred in more serious form during 1951. Thereafter, he continued to be the Company's president; but his activities were confined principally to occasional visits of one-half hour or so to the Company's office, accompanied by a nurse; and after 1953, he was confined entirely to his home, where he from time to time had conferences regarding business matters with the Company's general manager, Walther. The latter, in his capacity as general manager, assumed responsibility for the Company's day-to-day operations, but he still regarded Chism to be the one who had the power to make final decisions on major policy matters, *310 such as those pertaining to the larger expenditures, the types of products to be handled by the Company, and the further development of the business. Chism, from the time of his more serious heart ailment in 1951 until his death at age 75 years on December 27, 1956, required the constant attention of from one to three registered nurses, and the use of oxygen tanks and other medical equipment maintained in his home. He continued however until his death to be mentally alert and capable of making certain business decisions. Notwithstanding that Chism was incapacitated physically after 1951, and that the amount of his services to the business thereafter declined steadily, the Company continued to pay him either the same or increased amounts of salary for the years 1952 through 1956. All of the "salary" so paid for said years was treated by the Company as "salary" on its books and in its corporate income tax returns. During the years 1935 through 1958, Chism or his wife made numerous withdrawals from the petitioner corporation, and also made certain repayments with respect thereto. These withdrawals and repayments were recorded on the Company's records, in a ledger account entitled "E. *311 W. Chism - Note Receivable." Actually, no promissory notes or other written instruments evidencing such withdrawals were ever executed or delivered to the Company. Also, no interest was ever charged or paid on the outstanding balances; and no collateral security therefor was ever given. The total amounts of said withdrawals and repayments by years, were as follows: With-
Repay-
drawals
ments
Balance
1935-1946
$43,017.77
$24,090.95
$18,926.82 [1]
1947
18,926.82
1948
6,584.45
1,200.00
24,311.27
1949
1,500.00
25,811.27
1950
1,500.00
2,803.25
24,508.02
1951
7,500.00
1,720.17
30,287.85
1952
10,046.90
40,334.75
1953
7,821.16
48,155.91
1954
10,213.88
58,369.79
1955
12,565.81
70,935.60
1956
7,300.00
78,235.60
1957
78,235.60
1958
78,235.60 [2] The withdrawals prior to 1952 were used by Chism principally for the payment of personal income taxes and the purchase of property; but those for years subsequent to 1951 were used principally in meeting household and medical expenses. All of the withdrawals were *312 made informally; and they were not earmarked by the Company for application to medical expenses. There is no indication on the Company's books or elsewhere that the payments were made pursuant to any health insurance plan. The employees of the Company were not notified or advised of the existence of any such a plan, nor did they have any right to demand benefits under any such a plan. Sometime prior to April 1957, a revenue agent who was examining the returns of the several petitioners for the years here involved, discussed with the Company's accountant the possibility of treating the withdrawals for said years as informal dividends. Said accountant then discussed this matter with Chism's wife and Walther; and it was the accountant's feeling that something should be done to "clean up" the balance shown in the Company's abovementioned "E. W. Chism - Note Receivable" account. Thereafter on April 25, 1957, the Company filed a claim against the estate of E. W. Chism for the amount of the then outstanding balance of $78,235.60 in said account. This claim was subsequently allowed by the probate court in Reno, following approval of the same by Clara Chism as executrix; and the amount thereof, *313 without interest, was then paid in full to the Company by the estate on October 20, 1958. The Company did not at any time have any formal plan of "health insurance" for its officers or employees; nor did it have any formal salary or wage continuance plan. However, it did on seven occasions during the period from 1941 through 1960, pay all or part of the wages of employees who were temporarily ill or who had surgical operations. In all these cases except two, the amounts paid as wages to the employee during his illness, ranged from $449 to $875; and in the other two cases, the amounts so paid were respectively $2,650 and $4,770.39. In 1948 (which was prior to the taxable years here involved), the Company entered into a contract with Walther who later became its general manager, under which it was agreed that Walther would continue to serve as an employee of the Company until 1965, with provision for extension of such employment by agreement of the parties to 1970, and with provision for another possible extension thereafter until 1975. Also under said contract the Company agreed to pay Walther after his retirement on any one of the above-mentioned dates, or to pay his surviving wife *314 or children in the event he died prior to or after his retirement, certain specified amounts; and the Company further agreed to make provision for such possible future payments by acquiring from the Northwestern Mutual Life Insurance Company, of Milwaukee, a retirement income policy on the life of Walther. The Company, shortly before entering into the last-mentioned contract and in contemplation thereof, did obtain a retirement income policy covering the life of Walther. Said policy had a date of death maturity value of $30,000; and it further provided that beginning on December 12, 1974, if Walther were then living, the insurance company would make payments to the "direct beneficiary" of $300 per month, in 120 monthly installments certain. A supplemental statement attached to the policy and expressly made a part thereof, further provided in material part as follows: * * * the Chism Ice Cream Company, * * * hereby designates itself, its successors or assigns, as direct beneficiary. The power to exercise all rights and privileges specified in the policy or conferred by its terms upon the insured [Walther] is hereby vested during the lifetime of the insured solely in the Chism Ice Cream *315 Company, its successors or assigns, including the right to change or revoke the designation of direct beneficiary, but no one shall be designated except as permitted by law; * * * 1. Upon the death of the insured, any remaining installments certain shall be paid as they fall due to the Chism Ice Cream Company, its successors or assigns, with the privilege of commutation. 2. Should any payments be made after the death of the insured and after the installments certain have been paid, they shall be held by the Chism Ice Cream Company, its successors or assigns, as agent for and subject to the order of the [insurance] Company. The policy was never assigned to Walther, nor was he ever designated as the "direct beneficiary." During each of the years 1953 through 1956, the petitioner corporation paid premiums on this policy in the amount of $1,760.40 per year. It treated these premium payments on its books and records as current expenses; but it did not claim deductions for the same on its income tax returns. E. W. Chism and his wife filed their joint income tax return for the year 1952 on April 15, 1953; and they therein reported gross income in the amount of $25,141.37. This amount did *316 not include any portion of the $10,046.90 withdrawals from the petitioner corporation, which said petitioners received in that year and which the respondent determined to be includible in their gross income for said year, as "informal dividends." On November 13, 1957, which was more than 3 but less than 5 years after the filing and due date of said return, Clara Chism, acting both individually and as executrix of the decedent's estate, entered into a consent agreement (Form 872) with the Internal Revenue Service, under which the time for making any assessment of income tax for the year 1952 was extended to June 30, 1959. The deficiency notice herein, pertaining to the years 1952 through 1956, was issued on March 6, 1959. Ultimate Findings Reasonable allowances to the Chism Ice Cream Company, as salary to E. W. Chism for personal services actually rendered by him during the years 1953 through 1956, are: 1953
$20,000
1954
15,000
1955
12,000
1956
12,000
The withdrawals made by E. W. Chism and his wife from Chism Ice Cream Company, during the years 1952 through 1956, constitute informal dividends to Chism and his wife as stockholders of the Company. Chism Ice Cream Company did not have a health *317 insurance plan in effect during any of the years here involved. Assessment of any deficiency respecting the income tax of E. W. Chism and his wife for the year 1952 is not barred by the statute of limitations. Opinion 1. The first issue pertains to whether part of the "salary" which the petitioner corporation paid to E. W. Chism during each of the years 1953 through 1956, represents excessive compensation for services rendered, which is not deductible by the Company. Section 23(a) of the 1939 Code and section 162(a) of the 1954 Code, each provides in substance that an employer may deduct as one of the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, "reasonable allowance for salaries or other compensation for personal services actually rendered." What is or is not a reasonable salary or other compensation, is a question of fact which must be determined from a consideration of all the facts and circumstances established in the particular case involved. In the instant case, the Company paid Chism as "salary": $24,000 for the year 1953; $24,400 for the year 1954; and $24,210 for each of the years 1955 and 1956. The respondent, *318 in his notice of deficiency, allowed deductions to the Company for salary to Chism, in the amounts of only $5,000 for 1953, and $5,200 for each of the 3 subsequent years. After considering and weighing all the evidence pertaining to this issue, we have concluded that both parties have adopted extreme positions; that adjustments thereto should be made; and that the amounts of reasonable compensation allowable as salary to Chism for the several years involved are those stated in our first ultimate finding of fact, to wit: $20,000 for the year 1953; $15,000 for the year 1954; and $12,000 for each of the years 1955 and 1956. In reaching these conclusions, we have given consideration, among other things, to the following: To the nature and size of the Company's business and the period during which Chism was connected therewith; to the condition of Chism's health, and the amounts of time and service which he was able to give to the Company during the years involved; to the increasing responsibilities given to Walther beginning in 1953, and the increased amounts of salary paid to him thereafter; to the relationship between the amounts of the salaries paid to Chism and Walther on the one hand, *319 and the amounts on the other hand of the Company's sales and of its net income both before and after taxes, for an extended number of years. We also have taken into consideration the fact that the salaries paid were subject to the complete control of Chism and his family; and that no formal dividends were declared and paid to Chism and his family as stockholders, during any of the years involved. We hold that the amounts which the petitioner corporation is entitled to deduct as salary to Chism for the years 1953 through 1956 are the above-mentioned amounts which we have stated in our first finding of ultimate fact to be reasonable compensation; and that all additional amounts paid by the corporation to Chism as "salary" for said years, represented excessive compensation which constituted informal dividends to Chism and his wife as stockholders. Such additional amounts are not deductible by the Company. The petitioner corporation has argued, in the alternative, that if any portions of the amounts paid to Chism as salary during the years involved are not deductible as "salary," then the same should be allowed to it as deductions for "health insurance payments." We have hereinbefore found *320 as facts, however, that the Company did not have any plan of health insurance in effect during any of the years involved; and that it did not pay any of the amounts of such "salary" as health insurance payments. We hold that to the extent the amounts paid as "salary" constituted excessive compensation under our preceding findings and holdings, they are not deductible by the Company either as "salary payments" or as "health insurance payments," under any provision of the 1939 Code or of the 1954 Code. 2. The second issue pertains to the deductibility by the Company of the premiums which it paid in each of the years 1953 through 1956, on the retirement income policy covering the life of Walther. What happened with regard to this issue, was this. In 1948, the Company entered into an employment contract with Walther, under which it agreed to make monthly payments to him after his retirement in 1965 or 1970 or 1975, as the case might be; and in which it further agreed that, if Walther died prior to his retirement or during any future period when he was receiving retirement payments, the Company would make monthly payments of other amounts to his wife or children, if they were then living. *321 Also, as a corollary to said employment contract, the Company agreed to, and did, take out a retirement income policy on the life of Walther, under the terms of which the insurance company was to pay to the petitioner corporation, as the "direct beneficiary," either $300 per month over a 10-year period commencing on December 12, 1974 (which was 3 weeks before the last possible date for Walther's retirement), or the lump sum of $30,000 if Walther died prior to that date. The petitioner corporation at the same time caused a supplemental statement to be attached to the policy, in which it specifically designated "itself, its successors or assigns, as direct beneficiary"; and also reserved to itself, "[the] power to exercise all rights and privileges specified in the policy * * * including the right to change or revoke the designation of direct beneficiary." The amounts which were to become payable to the petitioner corporation under the terms of the policy were fixed; whereas the amounts which the Company might thereafter become liable to pay either to Walther or to his survivors, varied according to whether he lived or died, or according to the date on which he retired. This insurance *322 policy was never thereafter assigned to Walther; and he never was designated as the "direct beneficiary." It is our conclusion that the purpose of the policy was to provide the Company itself with future funds which it might thereafter use in meeting its varying and contingent contract liabilities to Walther or his surviving wife or children. The policy thus represented a capital investment of the petitioner corporation; and it follows that the premiums which it paid thereon are not deductible by it as current operating expenses. See James G. Whitaker, 34 T.C. 106, 110; and Merrimac Hat Corporation, 29 B.T.A. 690, 693-695. Moreover, section 24(a)(4) of the 1939 Code and section 264(a)(1) of the 1954 Code, each specifically provides that no deduction shall be allowed for premiums paid on any life insurance policy covering the life of any officer or employee, when the taxpayer is directly or indirectly a beneficiary under such policy. We hold that the premium payments here involved are not deductible by the petitioner corporation for any year. 3. The third issue relates to the withdrawals from the petitioner corporation, which were made by E. W. Chism and his wife during the years *323 1952 through 1956. The findings of fact which we have hereinbefore made disclose a pattern of numerous, continuous, and substantial withdrawals of such character, over a period of more than 20 years extending from 1935 through 1956. During the years 1935 through 1951, the net amount of such withdrawals after all partial repayments thereon, was approximately $30,288; and during the subsequent years of 1952 through 1956 which are here involved, the amount of the additional withdrawals as to which no repayments whatever were made, was nearly $48,000. Thus, at the end of the year 1956, the outstanding balance of such withdrawals totaled $78,235.60. None of these withdrawals was ever evidenced by any promissory note or other written instrument; no collateral security was ever given therefor; and no interest was ever paid thereon. Also, the Company did not, at any time during Chism's life, take any steps to enforce repayment of the same. During all the years in which said withdrawals were made, Chism and his wife and daughter owned all or substantially all the Company's outstanding shares of stock; and they also were the Company's only officers and directors. Moreover, notwithstanding that *324 the earned surplus of the Company increased from $18,186.85 at the end of the year 1937 to $293,554.19 at the end of the year 1956, no formal dividend was declared and paid in any year subsequent to 1937, except a small dividend of $587.16 in the year 1946. On April 25, 1957, which was more than a year after the death of E. W. Chism, the Company acting through Clara Chism as its secretary, filed a claim against the decedent's estate for the then outstanding balance of the accumulated withdrawals, in the amount of $78,235.60. Thereafter such claim was allowed by the probate court, following approval of the same by Clara Chism acting in her capacity as executrix of the estate; and then the amount thereof, without interest, was paid by the estate to the Company. But all of this was done, and we think significantly, only after a revenue agent had discussed the withdrawals with the Company's accountant; and after such agent had suggested the possibility of the same being treated as "informal dividends." Moreover, the fact that the probate court allowed said claim as a debt, in a nonadversary proceeding after Clara Chism had approved the same for payment, does not preclude this Court from *325 deciding on the basis of the evidence before it, whether said withdrawals should properly be classified for Federal income tax purposes as "informal dividends" to Chism and his wife, as determined by the Commissioner. See Estate of Ralph Rainger, 12 T.C. 483, 495, affd. per curiam (C.A. 9) 183 F. 2d 587. See also Estate of Howard E. Stevens, 36 T.C. 184, 193-194, and cases cited therein. Nor are we so precluded by the fact that the withdrawals were carried on the Company's books as "loans"; for book entries are no more than evidential, being neither indispensable nor conclusive. Doyle v. Mitchell Bros. Co., 247 U.S. 179, 187; Emanuel N. (Manny) Kolkey, 27 T.C. 37, 57-58, affd. (C.A. 7) 254 F. 2d 51. We here hold, after considering and weighing all the evidence, that the withdrawals so made in the years here involved (being $10,046.90 for the year 1952; $7,821.16 for the year 1953; $10,213.88 for the year 1954; $12,565.81 for the year 1955; and $7,300 for the year 1956) were not true "loans"; that they were rather, as we have hereinabove found as an ultimate finding of fact, "informal dividends" paid to E. W. Chism and his wife as shareholders of the Company; and that the amounts *326 thereof are includible in the gross incomes of said individuals for the respective years in which the withdrawals were made. See, in this connection, Elliott J. Roschuni, 29 T.C. 1193; and William C. Baird, 25 T.C. 387. There is no merit to the petitioners' alternative contention that, if said withdrawals are not excludible from the gross incomes of said individuals as "loans," (which we have held they are not), then they should be excludible from such gross incomes as "health insurance plan payments." We have hereinabove found and held in connection with the "salary" issue, that the Company did not have any health insurance plan; and also that such withdrawals were not earmarked by the Company for application to medical expenses. Moreover, the practice of said individuals in making substantial withdrawals from the Company, in lieu of the formal declaration and payment of dividends, began long prior to the time of Chism's illness. We approve the Commissioner's determination as to this issue. 4. The final issue is whether assessment of a deficiency in respect to the income tax of E. W. Chism and his wife Clara for the year 1952, is barred by the statute of limitations. Section 275(c) *327 of the 1939 Code provides in substance that the tax may be assessed at any time within 5 years after a taxpayer's return was filed, if the taxpayer omitted from the gross income stated in the return, an amount properly includible therein which is in excess of 25 percent of the amount of the gross income returned. Also, section 276(b) of said Code provides in substance that where, before the expiration of the time for assessment which is prescribed in section 275, the Commissioner and the taxpayer have consented in writing to an assessment being made thereafter, then the tax may be assessed at any time prior to the expiration of the period so agreed upon. In the instant case, Chism and his wife reported in their joint income tax return for 1952, gross income in the amount of $25,141.37; but they omitted therefrom the additional amount of $10,046.90 represented by withdrawals received from the petitioner corporation in said year, which we have hereinabove found and held constituted "informal dividends" that are includible in their gross income for said year. This additional amount is in excess of 25 percent of the gross income reported by Chism and his wife on their 1952 joint return; *328 and accordingly the 5-year period of limitation provided by section 275(c) was applicable. Also, before the expiration of said 5-year period, Clara Chism acting both individually and as executrix of the decedent's estate, entered into a consent agreement (Form 872) with the Internal Revenue Service, under which the period for assessment of any deficiency for the year 1952 was extended to June 30, 1959. And prior to this last-mentioned date, the Commissioner issued his notice of deficiency herein. We hold, on the basis of the foregoing, that assessment of a deficiency in respect of the income tax of Chism and his wife for the year 1952, is not barred by the statute of limitations. Decisions will be entered under Rule 50. Footnotes
2. The Company declared and paid no formal dividends subsequent to 1937, except in 1946 when it paid the above amount of $587. ↩
1. In 1958 and 1959, the Company elected to be taxed as a small business corporation. ↩
4. Amounts shown for John T. Walther include salary and bonus.↩
3. Chism died on December 27, 1956. ↩
1. These figures for the period 1935-1946 represent accumulations of withdrawals and repayments during said years. ↩
2. The "repayment" shown for the year 1958 was made by the executrix of the Estate of E. W. Chism, deceased, as hereinafter shown.↩